UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

№ 05 Crim. 0621 (RJS)

UNITED STATES OF AMERICA,

AGAINST

ALBERTO WILLIAM VILAR AND GARY ALAN TANAKA,

Defendants.

MEMORANDUM AND ORDER
July ___, 2008

RICHARD J. SULLIVAN, District Judge:

Defendants Alberto William Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka") are charged with conspiracy to commit securities fraud, as well as substantive counts alleging securities fraud, investment adviser fraud, mail fraud, wire fraud, and money laundering. Before the Court is defendant Vilar's request for an adjournment of the trial in this action — currently scheduled to commence on September 8, 2008 — in order to allow his counsel to review the government's pretrial disclosures. (*See* Vilar's July 14, 2008 Ltr. at 2.) Also before the Court is the government's motion seeking, pursuant to Rule 15 of the Federal Rules of Criminal Procedure, to take deposition testimony from four witnesses located in the United Kingdom. Defendants oppose the government's motion on the grounds that the government has brought the motion after "substantial and unexplained delay" and that being required to conduct depositions at this stage of the case will unfairly prejudice defendants' ability to prepare for trial. (Tanaka's July 17, 2008 Ltr. at 1.)

For the following reasons, the Court adjourns the trial to September 22, 2008. The Court also grants the government's request to take deposition testimony from two of the four proposed witnesses. In regard to the remaining two witnesses at issue in the government's Rule 15 motion, the Court

denies the government's request to take their deposition testimony without prejudice to the government renewing its motion on the basis of additional materials relating to those witnesses.

I. BACKGROUND

The Court presumes the parties' familiarity with the facts of this action and briefly recites those facts necessary to resolve the instant motion. The following facts are undisputed, unless otherwise noted.

The indictment in this case charges that, from July 1986 to May 2005, defendants were shareholders, directors, and officers of Amerindo Investment Advisors Inc. ("Amerindo U.S.") and Amerindo Investment Advisors (UK) Ltd. ("Amerindo UK"). Defendants were arrested on May 25, 2005, and indicted on July 26, 2005.[1] On July 25, 2005, the government submitted a request to British authorities, pursuant to the Mutual Legal Assistance Treaty ("MLAT") between the two countries, whereby it sought business records from Amerindo UK. In the MLAT request, the government identified, among others, an employee of Amerindo UK, James Stableford, as a person "[i]nvolved" in the conduct underlying the investigation of Vilar and Tanaka. (*See* Tanaka's July 17 Ltr. Ex. C at 8.)

Subsequently, at a conference held before the Court on November 7, 2005, the Honorable Kenneth M. Karas, District Judge — to whom this case was originally assigned — set a trial date of April 17, 2006.[2] Thereafter, due to matters unrelated to the witnesses at issue here, the Court adjourned the trial to January 2, 2007, then to July 14, 2008, and, finally, at a conference before the Court on May 2, 2008, to the currently scheduled trial date of September 8, 2008.

By order dated, January 14, 2008, the Court directed the government to disclose to defendants prior to trial "(1) a list of all witnesses that the government intends to call at trial, (2) a list of all exhibits that the government intends to offer at trial, and (3) a letter detailing the 404(b) evidence it intends to offer at trial." (January 14, 2008 Memorandum & Order ("January 14 Order") at 21.) Subsequently, the Court set a deadline of July 9, 2008 for the government to disclose these items in anticipation of the September 8, 2008 trial. (*See* May 5, 2008 Order.)

On May 28, 2008, Herald Price Fahringer, Esq., filed a notice of appearance as counsel for defendant Vilar. (*See* Dkt. Entry # 250.) Following a conference before the Court on that date, the Court approved the withdrawal of Vilar's prior counsel and the entry of Mr. Fahringer into the case. (*See* May 28 Tr. at 5-6.)

Thereafter, by letter dated July 14, 2008, Mr. Fahringer indicated that he received, *inter alia*, "40,000 pages of exhibits" from the government on July 9, 2008 (hereinafter, the "July 9 exhibits"). (Vilar's July 14 Ltr. at 2.) According to Mr. Fahringer, he "cannot" effectively review these materials in order to "adequately prepare" for trial on September 8, 2008. (*Id.*) As such, he asked the Court to grant a "reasonable adjournment" of the trial

---

[1] Subsequently, the government filed three superceding indictments. The government filed the third superseding indictment on August 15, 2006.

[2] The case was reassigned to my docket on October 2, 2007.

2

in order to permit him to review the government's disclosures and to preserve Vilar's rights under the Fifth and Sixth Amendments.[3] (*Id.*) Vilar did not request a specific period of adjournment in his letter. However, at a subsequent conference before the Court on July 18, 2008, Vilar's counsel "ask[ed]" the Court to adjourn the trial to November 10, 2008, but noted that "any continuance . . . would be welcome." (July 18 Tr. at 95.)

On July 15, 2008, the government moved, pursuant to Rule 15, to depose four witnesses located in the United Kingdom: Stableford, Robert Griffin, Maxine Rye, and Vanessa Laybourn (the "UK Witnesses"). Each of the UK Witnesses was employed by Amerindo UK during at least part of the period at issue in the indictment and, according to the government, was subject to the direction of defendant Tanaka during that time.

In its motion, the government asserted that it "initiated its efforts" to interview the UK Witnesses in February 2008, and succeeded in interviewing each of them by April 2008. (Govt.'s July 21 Ltr. at 5.) Moreover, it is undisputed that, since October 2005, the government has been in possession of and reviewed a large number of documents purportedly relating to Amerindo UK.

Nevertheless, prior to filing the instant motion on July 15, 2008, the government had not indicated its intention to conduct a Rule 15 deposition of *any* witnesses in this case, including the UK Witnesses. According to the government, it did not file its Rule 15 motion at an earlier date because it only learned of the UK Witnesses' unavailability in June and July of this year.

Specifically, in regard to Griffin and Stableford, the government asserts that it first learned of those witnesses' unwillingness to testify at trial through the representations of their counsel, Neil Mickelthwaite, Esq, on July 2, 2008.[4] (*See* Govt.'s July 15 Ltr. at 1 n.1; Govt.'s July 21 Ltr. at 3.) In regard to Rye, the government asserts that it learned that Rye was "unwilling to testify" on June 19, 2008. (Govt.'s July 21 Ltr. at 5-6.) In regard to Laybourn, the government asserts that it learned on June 19, 2008 that she was undecided as to whether she would make herself available to travel. (*Id.*) Subsequently, on July 22, 2008, the government learned that Laybourn would not only refuse to appear at trial but was also unwilling to participate in a deposition in the UK.[5] (*See* Govt.'s July 22 Ltr. at 3.)

## II. DISCUSSION

Below, the Court first grants Vilar's request to adjourn the trial but for a lesser period than that sought by Vilar. Next, the Court grants the government's motion to take the deposition testimony of Griffin and

---

[3] By letter dated July 15, 2008, the government indicated its opposition to Vilar's request to adjourn the trial. (*See* Govt.'s July 15 Ltr. at 5.)

[4] On July 22, 2008, the government received a letter from Mr. Mickelthwaite confirming that these two witnesses' "did not wish to testify at a criminal trial in the United States." (Govt.'s July 21 Ltr., Ex. A.)

[5] The government's information regarding Rye and Laybourn is based on the representations of a Metropolitan Police Officer in the UK, Detective Constable Keith Burn, and his accounts of his conversations with those witnesses.

3

Stableford. However, the Court denies the government's motion in regard to Rye and Laybourn without prejudice to renewal.

A. Vilar's Request to Adjourn the Trial

In his letter motion, Vilar asserted that a "reasonable adjournment" of the trial was required due to the volume of materials disclosed by the government to defendants on July 9, 2008, and the need for his counsel to "review[] all of it in time for trial." (Vilar's July 14 Ltr. at 2.) For the following reasons, the Court adjourns the trial for two weeks based on the reasons advanced by Vilar as well as the additional reasons related to the government's Rule 15 motion, as discussed in Part II.B. However, the Court declines, in its discretion, to grant the significant adjournment asked for by Vilar's counsel at the July 18 conference on the ground that Vilar has failed to present any persuasive basis to justify such a lengthy postponement of the trial.

In *United States v. Scopo*, the Second Circuit affirmed the trial court's denial of one defendant's request to adjourn the trial where the request was made approximately one month prior to the scheduled trial date and was not joined in by his codefendant. 861 F.2d 339, 344 (2d Cir. 1988). In so ruling, the Second Circuit in *Scopo* noted that, (1) at the time of the request to adjourn, the trial date had been "set" for three and one-half months, (2) "[t]he case had been pending more than two years," (3) the non-moving codefendant "was awaiting trial, and it made little sense to try him and [the moving defendant] separately in light of the overlapping charges," and, (4) prior to defendant's request to adjourn, "the court repeatedly made it clear that it would not adjourn" the schedule trial date. *Id.* Similarly, the district court in *United States v. Marcus Schloss & Co., Inc.*, followed the decision in *Scopo* and declined to grant an adjournment where the request was made approximately four months prior to trial, there were "co-defendants whose interest in a speedy trial must be considered" who had "shown no inclination to waive" their speedy trial rights, and the allegations against the defendants were "complex" and "intricately intertwined . . . ." No. 88 Crim. 796 (CSH), 1988 WL 140794, at *2-*3 (S.D.N.Y. Dec. 20, 1988).

The Court finds that the Second Circuit's reasoning in *Scopo*, when applied in the instant case, strongly favors rejecting Vilar's request to adjourn the trial for more than two months. First, by order dated February 19, 2008, the parties were put on notice that trial would begin on July 14 or, in the alternative, September 8. (*See* Feb. 19, 2008 Order at 1.) Thus, at the time of Vilar's request for an adjournment — on July 14 — the parties had been put on notice for nearly five months that the trial in this case would begin, at the latest, on September 8. Moreover, given that Mr. Fahringer appeared in this case on behalf of Vilar on May 28, he has had notice of the September 8 trial date for nearly three and one-half months. *See United States v. Slocum*, 695 F.2d 650, 656 (2d Cir. 1982) (affirming the trial court's denial of the defendant's request to adjourn where, *inter alia*, his new counsel had "nearly three months to prepare for trial" concerning the charges alleged in a nineteen-count indictment for criminal fraud in connection with the sale of unregistered securities).

4

Second, this case has been pending for more than three years — far exceeding the time at issue in *Scopo* — during which time Tanaka has been awaiting trial. Moreover, not only has Vilar's codefendant, Tanaka, "shown no inclination to waive" his speedy trial rights, *Marcus Schloss*, 1988 WL 140794, at *3, he has, at least since this case was reassigned to my docket in October 2007, persistently objected to any additional delays in the commencement of trial. (*See, e.g.*, Tanaka's Jan. 16, 2008 Ltr. at 1 ("Mr. Tanaka has consistently asserted his statutory and constitutional speedy trial rights and object to the Government's repeated requests for exclusions of time under the Speedy Trial Act.").)

Third, as in *Scopo*, it makes "little sense" to try the two codefendants in this case separately, given the "overlapping" charges and evidence at issue. *See Scopo*, 861 F.2d at 344. Therefore, granting Vilar's request to adjourn the trial for a significant period of time would likely prejudice the interests of the public and Tanaka in conducting the long-awaited trial in this case. Finally, as in *Scopo*, this Court has "repeatedly made it clear that it would not adjourn" the September 8 trial date. (*See, e.g.*, July 18 Tr. at 2.)

Of course, this case may be distinguished from *Scopo* on the ground that the defendant in *Scopo* sought to adjourn the trial based on the unavailability of his preferred choice of counsel, *see Scopo*, 861 F.2d at 343-44; by contrast, in this case, Vilar seeks an adjournment on the basis of the purported need for his new counsel — retained nearly three and one-half months prior to trial — to review the large amount of pretrial disclosures in this case. However, the Court finds that, while Vilar's reason for seeking an adjournment differs from that advanced by the defendant in *Scopo*, it does not provide a persuasive basis to adjourn the trial in this case. Indeed, the reason advanced by Vilar is undermined by his own counsel's representations before this Court. In his first appearance before this Court, Mr. Fahringer unambiguously indicated, in seeking to be substituted into this case as Vilar's counsel, that he was aware of the magnitude of work involved in preparing for trial in this case, and that he was able to comply with the pretrial disclosure schedule previously agreed upon by the parties and adopted by the Court. Specifically, the following exchange took place between the Court and Mr. Fahringer on May 28, 2008:

> THE COURT: I want to make sure that you understand the schedule and what is likely to take place between now and September before I formally allow the substitution. But hopefully that shouldn't be a problem.
>
> MR. FAHRINGER: I appreciate that, your Honor. I am aware of that schedule, and I'm prepared to fulfill those commitments.
>
> ***
>
> THE COURT: I've provided for some discovery or disclosure of certain trial materials well in advance of trial to enable defendants to make such a [taint] motion after reviewing those materials. So . . . depending on whether or not motions are made, it could be a busy summer or not. But

5

you think you're in a position to come in and represent Mr. Vilar?

MR. FAHRINGER: I am, your Honor. I'm prepared to represent to the Court that I understand the [September 8, 2008] trial date, and I understand the magnitude of the work that must be accomplished here. I've cleared my schedule to do that, your Honor.

(May 28 Tr. at 3-5.) Thus, given the unambiguous notice provided to Vilar and his counsel of the likely magnitude and complexity of preparing for trial in this case, as well as Mr. Fahringer's representations to the Court regarding his readiness to comply with that schedule, there is no reasonable basis for this Court to conclude that the government's disclosure of a significant number of pages of government exhibits was "something unexpected[] . . . that drastically impacted [counsel for Vilar's] trial preparation." (Vilar's July 14 Ltr. at 2.)

Moreover, it is clear that, but for Mr. Fahringer's representations at the May 28 conference, this Court would not have permitted the substitution of counsel for Vilar. The Sixth Amendment gives a defendant in a criminal proceeding the right to "the Assistance of Counsel for his defense." *Scopo*, 861 F.2d at 344. However, "the 'right to choose one's own counsel is circumscribed in several important respects,' and 'must at times give way to the need for the fair and efficient administration of justice.'" *Id.* (internal citations omitted); *see, e.g.*, *United States v. Weinberg*, 852 F.2d 681, 687 (2d Cir. 1988).

In this case, the Court began the May 28 conference by stating that it wanted to "make sure that [Mr. Fahringer] underst[ood] the schedule and what is likely to take place between now and September *before* [it] formally allow[ed] the substitution." (May 28 Tr. at 3 (emphasis added).) Subsequently, only after Mr. Fahringer had informed the Court that he was aware that trial would begin on September 8, 2008, that he understood the "magnitude of the work that must be accomplished" prior to trial, and that he had "cleared [his] schedule" to accommodate the demands of this case (*id.* at 5), did the Court grant Vilar's request to substitute Mr. Fahringer for his previous counsel.

Thus, Vilar's current predicament — as characterized in his letter motion — did *not* arise from the government's conduct in disclosing its exhibits prior to trial or from the trial schedule adopted by this Court. Rather, it is clear that any problems now experienced by Vilar or his counsel in preparing for trial are the result of Vilar's decision to change counsel at a relatively late date in this case as well as Mr. Fahringer's representations to the Court that he was aware of and prepared to handle the full "magnitude" of the work in this case on the schedule set by the Court. (*See* May 28 Tr. at 5.) This conclusion is supported by the fact that Tanaka, who has had continuity of counsel since August 2, 2005, has not made a similar motion for an adjournment but, rather, as noted above, has consistently asserted that additional delays in the trial are unwarranted and prejudicial to his interest in a speedy trial.

Nevertheless, the Court acknowledges that Vilar's counsel now faces a difficult, although certainly not impossible, task in

preparing for trial by September 8 due to the sheer volume of materials at issue in this case. Accordingly, in light of this reason, as well as the additional reasons set forth below concerning the government's Rule 15 motion, the Court adjourns the trial for two weeks, to September 22, 2008. The Court further finds that this brief adjournment will not impose a substantial burden on Tanaka's interest in a speedy trial, at least where the time between September 8 and September 22 may be excluded under the Speedy Trial Act for the reasons set forth in Part II.C of this decision.

Moreover, given the new trial date of September 22, the Court sees no reason why Vilar's counsel will be unable to adequately review the July 9 disclosures in their entirety prior to trial. Specifically, the Court fully expects that Vilar's counsel — an attorney of considerable skill and experience who is held in the highest regard by this Court and by other members of the bar — will be able to review the July 9 disclosures in the two and one-half months between the date of the disclosures and the commencement of trial. Indeed, other than offering conclusory assertions regarding the "unsettling" size of the July 9 disclosures (*see* Vilar's July 14 Ltr. at 2), Vilar has failed to offer any persuasive reason why this task cannot be accomplished.

Furthermore, in regard to Vilar's purported need for additional time for his counsel to review the July 9 disclosures for potential taint (*see* Vilar's July 14 Ltr. at 4), the Court notes that defendants are not entitled to conduct a taint hearing at any point prior trial. (*See* Jan. 14 Order at 27-32.) Therefore, to the extent that Vilar asserts that his counsel will be unable to prepare for both a pretrial taint hearing as well as the trial itself, the Court rejects that argument as a basis to further postpone the trial date. The possibility that Vilar will be unable to file a *pretrial* motion to preclude the use of purportedly tainted evidence does not warrant yet another adjournment of the trial in this case, at least where Vilar will, if necessary, have a full and fair opportunity to litigate any taint issues following the trial. (*Id.* at 27-28 ("Although the Court declines at this time, to specify precisely when Defendants' motion [to preclude purportedly tainted evidence] should be resolved, it finds that resolution of the motion may, for good cause shown, be deferred until after the trial in this action.").)

Vilar also asserts that an adjournment is merited on the ground that his counsel needs additional time to prepare to examine at least 29 individuals identified on the government's witness list whom Vilar had purportedly never "even heard of . . . ." (*Id.* at 4.) However, there is no basis to conclude that the period from July 9 to September 22 is an inadequate amount of time to prepare to examine such witnesses, especially where, pursuant to this Court's June 22, 2008 Order, defendants will receive § 3500 material relating to the government's anticipated witnesses no later than two weeks prior to trial. (*See* June 22, 2008 Order.)

Finally, the Court rejects Vilar's request for an adjournment on the ground that his counsel needs additional time to review the government's Rule 404(b) material. (*See* Vilar's July 14 Ltr. at 5.) The government correctly points out that the parties, including Vilar — who was then represented by his prior counsel — *jointly* proposed the briefing schedule set forth in the Court's May 5, 2008 Order, which included deadlines for the

7

submissions of for Rule 404(b) motions and opposition briefs. (*See* May 5, 2008 Order.) Vilar has failed to present any persuasive reason to excuse himself from a schedule that he consented to only a few months ago, and that affords him a substantial period of time — approximately three weeks — to submit a brief regarding the government's proposed Rule 404(b) evidence. (*See id.*)

\*\*\*

Accordingly, for the foregoing reasons, the Court finds that Vilar has failed to present any persuasive basis to adjourn the trial for a significant period of time. Nevertheless, in light of Vilar's representations in his July 14 letter as well as the additional reasons discussed herein relating to the government's Rule 15 motion, the Court adjourns the trial to September 22, 2008. In the Court's view, this relatively brief adjournment is sufficient to accommodate both Vilar's purported need for additional time as well as the interests of the public and defendants in avoiding additional delays in this case.

### B. The Government's Rule 15 Motion

Defendants correctly point out that the government should have considered the need for Rule 15 depositions at an earlier point in the protracted history of this case. However, for the following reasons, the Court finds that the government has nevertheless demonstrated that "exceptional circumstances" justify taking the deposition testimony of two of the UK Witnesses — Griffin and Stableford. Fed. R. Crim. P. 15(a). In so ruling, the Court finds that the timing of the government's Rule 15 motion does not warrant the denial of its application, at least where any prejudice that may arise from conducting depositions at this stage of the case can be cured by briefly adjourning the trial in this action.

However, the Court finds that the government has failed, at this time, to establish the materiality of the anticipated testimony of Rye and Laybourn, and, therefore, denies the government's motion as to those witnesses without prejudice to renewal.

#### 1. Legal Standard

Under Rule 15(a), a trial court may, in its discretion, order the deposition of a witness for use at trial "[w]henever due to exceptional circumstances of the case it is in the interests of justice." Fed. R. Crim. P. 15(a). It is well settled that, in order to establish "exceptional circumstances" under Rule 15, "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001) (quoting *United States v. Singleton*, 460 F.2d 1148, 1154 (2d Cir. 1972)); *see also United States v. Johnpoll*, 739 F.2d 702, 708-9 (2d Cir. 1984).

#### 2. Analysis

##### a. Unavailability

"Unavailability is to be determined according to the practical standard of whether under the circumstances the government has made a good-faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d

at 709. For the following reasons, the Court finds that the government has established the unavailability of the UK Witnesses.

As an initial matter, the Court rejects defendants' argument that the government *must* present affidavits from the proposed witnesses in order to establish their unavailability at trial.[6] (Tanaka's July 23 Ltr. at 5.) Defendants fail to cite any binding authority imposing such a requirement. Rather, the Second Circuit has held that the government's representations regarding unavailability may be sufficient to satisfy Rule 15, at least where the government established its "good faith" efforts to obtain the witnesses' presence at trial by indicating that it had repeated contact with the witnesses and had promised "to pay all expenses of the witnesses" in traveling to the United States. *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir. 1980). Similarly, the overwhelming majority of courts in this Circuit — and in other circuits — have rejected arguments that the movant must produce an affidavit from the proposed deponent in order to establish his or her unavailability.[7] *See, e.g.*, *United States v. Grossman*, No. 03 Crim. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005) ("Courts may accept the assertions of counsel on the facts relating to unavailability . . . .") (collecting cases); *United States v. Korolkov*, 870 F. Supp. 60, 65 (S.D.N.Y. 1994) (finding witnesses unavailable under Rule 15 while relying, in part, on the government's representations); *see also United States v. Sandoval*, No. 94 Crim. 714 (ACW), 1997 WL 458424, at *1 (N.D. Ill. Aug. 4, 1997) ("The movant may use affidavits or other materials to establish probable unavailability of witnesses. However Rule 15 does not explicitly require supporting affidavits; representations made by counsel in open court have been held sufficient to establish probable unavailability.") (internal citations omitted); *Des Marteau*, 162 F.R.D. at 368 ("[Rule 15] does not explicitly require supporting affidavits, and representations made by counsel in open court have been held sufficient to establish probable unavailability.") (internal citation omitted).

In regard to Stableford and Griffin, the Court finds that the government has established that they made a "good-faith effort" to produce the witnesses to testify at trial but that the witnesses are nevertheless unwilling to do so. *See id.* Specifically, the government indicates that, between February 2008 and July 23, 2008, it met with Griffin and Stableford in the United Kingdom and made repeated contact with their counsel. In

---

[6] Indeed, during a conference before the Court regarding the government's Rule 15 motion, the Court advised the government that they should attempt to produce affidavits from the witnesses *or* a "representation of counsel" regarding the respective witnesses' unavailability. (*See* July 18, 2008 Tr. at 38.)

[7] The Court finds no support for a contrary view in *United States v. Chusid,* No. 00 Crim. 0263 (LAK), 2000 WL 1449873, at *1 (S.D.N.Y. Sept. 27, 2000), a case cited by defendants. There, the district court noted, in denying the defendant's Rule 15 motion, that he had failed to submit "an affidavit from either prospective witness" regarding the content of their testimony or their unavailability. *See id.* However, the court did not construe defendant's failure to submit an affidavit, by itself, as a sufficient basis to deny the defendant's motion nor did the court cite any authority to that effect. Rather, the court declined to rely on the representations of counsel on the ground that they constituted merely "[c]onclusory statements of unavailability . . . ." *Id.* (emphasis added).

9

many of these instances, according to the witnesses' counsel, the government "explained [its] wish for Mr. Stableford and Mr. Griffin to give evidence at trial in the United States" and "offered to pay" the witnesses' travel expenses." (Mickelthwaite's July 22, 2008 Ltr. at 1.) Nevertheless, according to the witnesses' counsel, Griffin and Stableford ultimately decided, on the advice of counsel, "that they did not wish to testify at a criminal trial in the United States," and that this decision was communicated to the government as a "final" decision on July 2, 2008. (*See id.*)

Accordingly, the Court finds that Griffin and Stableford are unavailable based on (1) the fact that, as foreign nationals who reside in the United Kingdom, they are beyond this Court's subpoena power; *see, e.g.*, *Grossman*, 2005 WL 486735, at *5, (2) the government's repeated requests to the witnesses and/or their counsel that the witnesses travel, at the expense of the government, to the United States to testify at trial; and (3) the representations of the witnesses' counsel that they have reached a "final" decision to decline to testify a trial.

Moreover, the Court rejects defendants' assertion that the government's motion as to Stableford must fail because the government has not indicated whether it informed Stableford that, in the 2005 MLAT request, he "was named as a person involved in the alleged conspiracy." (*See* Tanaka's July 23 Ltr. at 2.) According to defendants, the absence of information on this point "raises significant questions as to whether, once fully informed, these witnesses would in fact choose to appear voluntarily" at a Rule 15 deposition in the UK

The Court rejects this argument as a basis to deny the government's Rule 15 motion. Neither the text of Rule 15 nor binding case law concerning the Rule provide any basis to conclude that, in resolving a Rule 15 motion, courts must consider the witness's willingness to voluntarily appear at a deposition in a foreign country. Rather, it is clear that, in order to resolve a motion under Rule 15, courts need only look to the witness' unavailability "for trial" and not to whether they have actually consented to make themselves available for the deposition.[8] *See Cohen*, 260 F.3d at 78 (observing that, in order to conduct a Rule 15 deposition, "[a] movant must show that . . . the prospective witness is unavailable for trial"); *see also United States v. Ganis*, No. 04 Crim. 0334 (JCC), 2008 WL 750587, at *3 (W.D. Wash. Mar. 18, 2008) (finding that, in opposing the government's Rule 15 motions, the defendant "is surely correct in stating that the Government is not assured of success if it makes a request to compel [the proposed deponent's] presence at a deposition under MLAT. However, that success is not a foregone conclusion does not overwhelm the exceptional circumstances that justify permitting the deposition to go forward . . . ."); *cf.* Fed. R. Civ. P. 15(e) (providing that "[a] *defendant* may not be deposed without that defendant's consent") (emphasis added).

The Court also finds that the government has sufficiently established the unavailability

---

[8] Moreover, when defendant raised this issue at the July 18, 2008 conference, the Court advised defense counsel that he was free to speak directly with Stableford's counsel in order to advise him of any information that defense counsel deemed was necessary and appropriate to convey. (*See* July 18 Tr. at 38-39.)

10

of Rye and Laybourn under Rule 15. Specifically, the government has represented that, as of July 22, 2008, both of these witnesses had relayed to Detective Constable Burn their unwillingness to travel to New York, at the expense of the government, to testify at trial (*See* Govt.'s July 21 Ltr. at 5-6 & Ex. A; Govt.'s July 22 Ltr. at 3.) Accordingly, the Court finds that the government has satisfied the unavailability prong of the Rule 15 standard in regard to Rye and Laybourn based on (1) their status as foreign nationals that reside in the United Kingdom, beyond this Court's subpoena power; *see, e.g.*, *Grossman*, 2005 WL 486735, at *5, and (2) the government's representations that both witnesses have relayed their unwillingness to travel to New York, at the expense of the government, to testify at trial.

### b. Materiality

"[T]estimony is material if it is 'highly relevant to a central issue in the case . . . .'"[9] *Grossman*, 2005 WL 486735, at *3 (quoting *United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993)). For the following reasons, the Court finds that the government has established, for the purposes of Rule 15, the materiality of the anticipated testimony of Griffin and Stableford, but has failed to do so in regard to the anticipated testimony of Rye and Laybourn. (*See* Govt.'s July 15 Ltr. at 2-7.)

However, as an initial matter, the Court rejects defendants' argument — similar to the argument rejected in the previous section — that, in order to satisfy the materiality prong, the government *must* produce "affidavits from the witnesses as to their proposed testimony, or at a minimum, produce all of the notes and memoranda of the witness interviews so that the Court and defense can properly evaluate materiality." (*See* Tanaka's July 23 Ltr. at 5.) In fact, there is no requirement that, in order to conduct depositions under Rule 15, the moving party must present affidavits from the proposed deponents, or any other materials concerning prior statements of the deponents. Rather, courts reviewing Rule 15 applications have overwhelmingly rejected such requirements. *See Khan*, 2008 WL 2323375, at *2 n.5 ("Defense counsel has not provided affidavits from the prospective witnesses themselves. The Government argues that the court should deny Defendant's Rule 15 motion on this ground alone. The court declines to do so."); *see also United States v. Farfan-Carreon*, 935 F.2d 678, 679-80 (5th Cir. 1991) ("We find no requirement in the language of Rule 15 that the motion must be supported by an affidavit, nor do the cases we have reviewed indicate that our court has imposed such a rigid requirement."); *United States v. Des Marteau*, 162 F.R.D. 364, 368 (M.D. Fla. 1995) (finding that a showing of materiality "'may be made by several means including affidavit, proffered testimony, or calling a witness to the stand; at the very least, the proffer must alert the district court to the substance of the evidence that is at peril of being excluded'") (quoting *United States v. Ramos*, 45 F.3d 1519, 1523 (11th Cir. 1995)). As such, there is no authority that bars this Court from relying solely on the basis of the

---

[9] The Court notes that neither Rule 15 nor the Advisory Committee Notes define "materiality."

11

government's representations in order to find that the materiality prong is satisfied.[10]

First, in regard to Griffin, the government indicates that he is likely to testify that Tanaka directed him to communicate with certain clients concerning the fraudulent schemes at issue in the indictment. In particular, the government asserts that Griffin will testify that he sent an email to Bear Stearns regarding a $5 million investment by one of the victims named in the indictment, Lily Cates, and that the email was sent "at Tanaka's direction" based on Tanaka's alleged "pressing desire to know if the money had been received" by Bear Stearns. (*See* Govt.'s July 15 Ltr. at 5.) Moreover, according to the government, Griffin is likely to provide testimony regarding Tanaka's alleged forgery of Cate's signature as part of a scheme — described at length in the indictment — to transfer funds held by her in a Bear Stearns account to an account controlled by defendants. (*See id.* at 5-6.) As such, it appears that Griffin's anticipated testimony is material to several of the claims alleged in the indictment; in particular, Griffin's testimony appears to be highly relevant to Tanaka's knowledge and participation in the alleged fraudulent schemes involving investments by Cates.

Second, in regard to Stableford, the government indicates that he is likely to testify that the various Amerindo entities — namely, the U.S., UK, and Panamian Amerindo entities — were treated by Amerindo UK employees as a single entity. (*See* Govt.'s July 15 Ltr. at 6.) This testimony bears directly on the government's assertion that defendants made false statements to clients and to the Securities and Exchange Commission regarding the purportedly distinct character of the various Amerindo entities. Moreover, the government asserts that Stableford is expected to provide testimony regarding Tanaka's alleged direction of the UK Witnesses' activities at Amerindo UK and Tanaka's alleged forgery of documents. (*See id.* at 7.) Finally, according to the government, Stableford is likely to testify that, in contrast to allegedly false statements made by Amerindo, he was unaware of any investment by the company in investment vehicles such as Treasury bills and corporate bonds. (*See id.*) Therefore, the Court finds that Stableford's anticipated testimony is highly relevant to several of the central issues raised by the charges alleged in the indictment; in particular, his anticipated testimony bears directly on, *inter alia*, false representations allegedly made by defendants regarding Amerindo's corporate structure and investments, as well as Tanaka's alleged misconduct.

Accordingly, the Court finds that the government has established that the aniticipated testimony of Griffin and Stableford is material under Rule 15.

However, the Court is unable to conclude, at this time, that the anticipated testimony of Laybourn and Rye is material to the charges alleged in the indictment. In regard to Laybourn, the government asserts that she is likely to testify that she sent mail, email, and

---

[10] However, "[w]hether the deposition testimony actually will be deemed material and admissible at trial is a different matter," and the Court takes no position on that issue at this time. *See United States v. Khan*, No. 06 Crim. 255 (DLI), 2008 WL 2323375, at *2 (E.D.N.Y. June 2, 2008).

12

faxes at the direction of Tanaka, and received dictation from him. (*See id.*) According to the government, this anticipated testimony is "necessary to explain . . . that various documents that were disseminated by Laybourn and others were sent at the direction of Tanaka." (*See id.*) In regard to Rye, the government asserts that she is likely to testify that certain unidentified "wire transfers between and among various Amerindo accounts occurred at the direction of Tanaka . . . ." (*See id.*) Moreover, according to the government, Rye is expected to provide testimony that "signatures were cut and pasted on to documents at times." (*See id.* at 8.)

While the government broadly asserts that this anticipated testimony is likely to concern the routing of correspondence and funds to and from Tanaka, it has failed to describe with any particularity the nature of such correspondence or funds, or to address the relationship between such conduct and any of the crimes alleged in the indictment. Moreover, in regard to Rye's anticipated testimony regarding signatures that "were cut and pasted," the government fails to assert that she will testify that Tanaka directed such conduct, or engaged in it himself. Finally, although the government asserts that "one or more of the UK Witnesses . . . are necessary to help authenticate and explain" certain documents expected to be offered at trial (*Id.* at 8), and that, in general, the UK Witnesses are necessary to establish Tanaka's control of the Amerindo UK office, the government has failed to assert that Rye or Laybourn are "necessary" to offer any particular document at trial, or that their testimony regarding Tanaka's purported control over Amerindo UK would be more than merely cumulative of that offered by Griffin and Stableford. *See,* *e.g.*, *United States v. Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) ("'[A] court may properly deny the motion [to take depositions] if the proposed testimony would be cumulative.'") (quoting *Grossman*, 2005 WL 486735, at *3).

Accordingly, because there is an insufficient basis to conclude that the anticipated testimony of Laybourn and Rye is "highly relevant to a central issue in this case," the government has failed, at this time, to establish that their anticipated testimony is material. *Grossman*, 2005 WL 486735, at *3.

Nevertheless, it appears that further information on the materiality of the witnesses' anticipated testimony may affect the Court's view as to the merits of a renewed Rule 15 motion. Accordingly, in the event that the government intends to renew its Rule 15 motion as to Rye and Laybourn, it shall submit, by August 6, 2008, a letter, not to exceed four pages, setting forth additional information, if any exists, concerning the materiality of the anticipated testimony of Rye and Laybourn. The defendants may each submit response letters, not to exceed four pages, by August 11, 2008.

c. Failure of Justice

It is well-settled that a Rule 15 deposition "is necessary to prevent a failure of justice" where the proposed witness is unavailable, her testimony is material, "and there are no substantial countervailing factors militating against the taking of the deposition." *Grossman*, 2005 WL 486735, at *3 (citing *Johnpoll*, 739 F.2d at 709 and *Drogoul*, 1 F.3d at 1552-56). Here, it is clear that, as discussed above, at least two of the UK

13

witnesses are unavailable and their anticipated testimony is material. Nevertheless, defendants argue that the government's motion should be denied on the basis of the government's purported delay in bringing the motion, "and the prejudice and inconvenience to the Defendants and the Court that have resulted therefrom . . . ." (Tanaka's July 23 Ltr. at 2.)

While "[i]t is within the discretion of the trial court to deny [a Rule 15] motion if it is made after 'unexcused delay,'" *United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962) (internal citations omitted), it is clear that such delay must be the product of "a serious lack of due diligence by the moving party" in order to deny a Rule 15 motion on that basis alone, *Drogoul*, 1 F.3d at 1556. As one court has observed, "when a substantial likelihood exists that the prospective deponents will be unavailable for trial and their testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony." *See Drogoul*, 1 F.3d at 1556; *accord Khan*, 2008 WL 2323375, at *4 ("The final factor — the necessity of the testimony to prevent a failure of justice — is likely satisfied when the first two factors are met.") (citing *United States v. Sun Myung Moon*, 93 F.R.D. 558, 560 (S.D.N.Y. 1982)); *Grossman*, 2005 WL 486735, at *4; *see also U.S. v. Stora Enso North America Corp.*, No. 3:06 Crim. 323 (CFD), 2007 WL 1845906, at *2 (D. Conn. June 26, 2007). "[P]recluding the taking of depositions under [such] circumstances is likely to frustrate, not expedite, the administration of criminal justice." *Drogoul*, 1 F.3d at 1556.

The cases cited by defendant do not mandate the application of a different standard. Indeed, in each of the cases cited by defendants wherein a court has denied a Rule 15 motion on the basis of the movant's delay in seeking to depose a witness, the court also relied on a finding that the proposed testimony at issue was immaterial and/or that the proposed deponent was not shown to be unavailable.[11]

Thus, in light of the above-cited rule that the "failure of justice" prong is "likely satisfied" where the materiality and unavailability prongs have already been met, the Court finds that the circumstances of the instant case do not evidence such a "serious lack of due diligence" on the government's part so as to require this Court to reject the government's motion solely on the basis of delay. *See Drogoul*, 1 F.3d at 1556. Here, the government initiated its efforts to interview the UK Witnesses in February 2008, and interviewed each witness by April 2008. Moreover, in regard to Griffin and Stableford, the government filed its Rule 15 motion less than two weeks after learning of those witnesses' decision to refuse to testify at trial, and more than seven weeks prior to the trial date in place at that time — namely, September 8.[12]

This sequence of events fails to establish inexcusable delay requiring the rejection of

---

[11] The Court also notes that each of the cases cited by defendants concerned a shorter period between the filing date of the motion and the scheduled trial date than the seven and six week periods found in the instant case.

[12] The Court does not address the government's delay in filing its Rule 15 motion against Rye and Laybourn, because the Court is not yet able to conclude if those witnesses' anticipated testimony is material.

14

the government's motion, at least where the government has otherwise satisfied Rule 15's requirements as to Griffin and Stableford. Indeed, a number of other district courts in this Circuit have granted Rule 15 motions filed even closer in time to the trial than the instant motion. *See, e.g.*, *Grossman*, 2005 WL 486735, at *4 (granting the defendant's Rule 15 motion one month prior to trial where the proposed deponent "just recently communicated his unwillingness to testify at trial," "defense counsel made this motion expeditiously," "[t]here ha[d] been no bad faith" on the part of defendant, and "no showing that the timing of the deposition would prejudice the government"); *Sun Myung Moon*, 93 F.R.D. at 560 (granting the defendants' motion to depose 120 witnesses one month prior to the scheduled trial).

Yet, in evaluating the government's purported delay, defendants also ask the Court to focus on, in addition to the period between the filing date of the Rule 15 motion and the September 8 trial date, the substantial amounts of time between the dates of various past events in this case — namely, defendants' arrest in May 2005, defendants' indictment in July 2005, and the two previously scheduled trial dates in this action, in April 2006 and January 2007 — and the date when the government initiated the process of attempting to interview the UK Witnesses, in February 2008. (Tanaka's July 23 Ltr. at 8.) According to defendants, the government's delay in even attempting to interview the UK Witnesses and in filing the instant motion has unduly prejudiced defendants by delaying the progress of this case.

However, these prior periods of delay are simply unrelated to the issue of whether conducting the proposed depositions at this time would unfairly prejudice defendants. Indeed, even assuming *arguendo* that the government had *never* filed a Rule 15 motion in this case, the trial in this action would commence, at the earliest, on September 8, 2008. More importantly, defendants have failed to cite any order that the government violated by failing to bring a Rule 15 motion at an earlier date or any authority indicating that the government's failure to file a Rule 15 motion prior to the two previously scheduled trial dates constituted a waiver of its ability to file such a motion at this time.

Therefore, the only potential prejudice related to the proposed depositions is that arising from the additional burdens imposed on defendants' pretrial preparation schedule, or from a delay in the commencement of the currently scheduled trial date. The Court is sympathetic to defendants' concerns regarding these issues, especially given the busy pretrial schedule set by the Court, as well as the fact that trial has yet to commence in this action, over three years from the date of defendants' arrest. However, in regard to the additional burden on defendants' trial preparation, it is clear that the two week adjournment of the trial ordered by the Court in this decision is sufficient to cure any prejudice arising from the Rule 15 depositions. Moreover, the Court finds that the period of the adjournment is sufficiently brief so as to avoid any substantial delay in the progress of this case and prejudice to the interests of the public and the defendants in a speedy trial.

C. Speedy Trial Act

Finally, the Court finds that the period from September 8, 2008 to September 22, 2008 is properly excluded from the computation of time under the Speedy Trial Act, 18 U.S.C. § 3161. Specifically, as to Vilar, the Court finds that, because he has specifically requested an adjournment of the trial on the ground that he needs additional time to review the government's disclosures, the ends of justice served by adjourning the trial outweigh the best interest of the public and Vilar in a speedy trial, such that the period of delay between the date of the government's motion and the new trial date is excluded pursuant to § 3161(h)(8)(A). The Court further finds that, as to defendant Tanaka, the two-week adjournment constitutes a "reasonable period of delay" arising from a codefendant's request for an adjournment that may be excluded from the computation of time pursuant to § 3161(h)(7). *See, e.g.*, *United States v. Cephas*, 937 F.2d 816, 821 (2d Cir. 1991) ("Under the speedy trial act, we have previously held that delay attributable to a codefendant is excludable speedy trial time as to all defendants.") (internal quotation marks and citation omitted); *United States v. Vasquez*, 918 F.2d 329, 336 (2d Cir. 1990); *United States v. Byrd*, 466 F. Supp. 2d 550, 551-52 (S.D.N.Y. 2006) ("[T]he Second Circuit has held that cases involving multiple defendants are ordinarily governed by a single speedy trial clock and that delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants.") (citing *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986) and *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983)).

Moreover, because the Court finds that conducting the depositions of at least two of the UK Witnesses is in the "interests of justice" pursuant to Rule 15, it further finds that the ends of justice served by adjourning the trial outweigh the best interest of the public and each defendant in a speedy trial, such that the period of delay between the date of the government's motion and the new trial date is excluded pursuant to § 3161(h)(8)(A).

Finally, the Court finds that the time is also excludable under the "essential witness" provision of the Speedy Trial Act. Specifically, § 3161(h)(3)(B) provides that any period of delay arising from the "unavailability" of an "essential witness" may be excluded, and that an "essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." Here, the Court finds, based on the government's representations addressed herein, that Griffin and Stableford are (1) "unavailable" because they have "refused to testify," *United States v. Marrero*, 705 F.2d 652, 657 (2d Cir. 1983); and (2) "essential" witnesses, in that their "testimony would be extremely important to the proceeding, perhaps providing proof that was not otherwise attainable," *id.* at 656. Accordingly, the Court finds that the "essential witness" provision provides an alternative basis to exclude the time from September 8, 2008 to September 22, 2008 under the Speedy Trial Act.

## IV. CONCLUSION

In sum, the Court finds that adjourning the trial in this action for two weeks will best accommodate (1) Vilar's request for additional time to review the government's disclosures prior to trial; (2) the government's entitlement, having satisfied the requirements of Rule 15(a), to preserve the testimony of two of the UK Witnesses, Griffin and Stableford; (3) defendants' interests in avoiding any unfair prejudice arising from the additional time needed to conduct Rule 15 depositions prior to trial; and (4) the interest of the public and the defendants in a speedy trial.

Therefore, Vilar's motion to adjourn the trial is GRANTED. However, the Court rejects Vilar's request to postpone the trial to November 10, 2008 and, instead, sets a trial date of September 22, 2008.

In addition, the government's Rule 15 motion is GRANTED as to Griffin and Stableford. The government shall proceed forthwith to schedule and to complete depositions of these witnesses in the UK.

Finally, the government's Rule 15 motion as to Rye and Laybourn is DENIED without prejudice to renewal. The parties shall submit additional materials regarding those witnesses in accord with the schedule set forth above.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: July 31, 2008
       New York, New York

\*\*\*

Defendant Vilar is represented by Herald Price Fahringer, Esq., Fahringer & Dubno PLLC, 120 East 56th Street, Suite 1150, New York, New York 10022. Defendant Tanaka is represented by Glenn Charles Colton, Esq., and Jessica L. Margolis, Esq., Wilson Sonsini Goodrich & Rosati, P.C., 12 East 49th Street, New York, New York 10017. The United States of America is represented by Marc O. Litt, Esq., Joshua Klein, Esq., and Benjamin Naftalis, Esq., United States Attorney's Office, Southern District of New York, One St. Andrew's Plaza, New York, New York 10007.